UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

CASEY HAYES PERRY #244528,　　　　　　　　Case No. 2:18-cv-00076

　　　　Plaintiff,　　　　　　　　　　　　　　　Hon. Paul L. Maloney
　　　　　　　　　　　　　　　　　　　　　　　U.S. District Judge
　　v.

JON L. HALL,

　　　　Defendant.
_____/

## REPORT AND RECOMMENDATION

### I. Introduction

This is a civil rights action brought by state prisoner Casey Hayes Perry pursuant to 42 U.S.C. § 1983. Perry is currently confined in the Thumb Correctional Facility in Lapeer, Michigan. Perry says that while he was confined at the Chippewa Correctional Facility (URF), Defendant Quartermaster Jon Hall violated his Eighth Amendment rights by refusing to order him properly-sized, prescription athletic shoes.[1]

Defendant Hall states that he has measured Perry's feet on four different occasions and determined that Perry wears a shoe size 11-E. Defendant Hall ordered Bob Barker brand athletic shoes for Perry. Perry refused to accept the shoes on several different occasions and says that Bob Barker brand shoes did not fit and are not appropriate shoes based upon his need for medical athletic shoes. As a result

---

[1] Perry alleges that he has diabetes, neuropathy, and bunions.

of his refusals to accept the Bob Barker brand athletic shoes, his medical accommodation for athletic shoes was cancelled.

Perry argues that his feet are size 10.5-5E or 6E (extra wide), and, in the past, he has received New Balance brand athletic shoes. Perry says that Defendant Hall had no right to measure his feet and that medically-prescribed, size 10.5-5E or 6E shoes, as measured by nursing staff, should have been ordered. Perry says that the shoes offered by Defendant Hall were too small and too tight, and caused him discomfort. Perry argues that Defendant Hall was deliberately indifferent to his need for proper shoes and ignored his medical prescription for properly-fitted athletic shoes.

Perry filed a motion for summary judgment (ECF No. 35) and Defendant Hall filed a motion for summary judgment (ECF No. 39). The undersigned has reviewed the materials filed by the parties. It is clear from the record that Defendant Hall did not violate Perry's Eighth Amendment rights. Defendant Hall measured Perry's feet several times and determined that he needed size 11-E athletic shoes. The fact that Perry disagrees with Defendant Hall's measurements and believes that Hall should have ordered size 10.5-6E athletic shoes from New Balance does not create a genuine issue of material fact regarding whether Defendant Hall acted with deliberate indifference to Perry's serious medical needs.

This Court understands that Perry was frustrated while waiting for properly-sized athletic shoes. Although Perry may establish that Defendant Hall was negligent in measuring his feet, Perry cannot establish that Defendant Hall acted

with deliberate indifference to Perry's serious medical needs in violation of Perry's rights under the U.S. Constitution. Accordingly, it is respectfully recommended that the Court grant Defendant Hall's motion, deny Defendant Perry's motion, and dismiss this case.

**II. Factual Allegations**

Perry says that on June 16, 2017, he submitted a prescription and Special Accommodation Notice/Medical detail to Defendant Hall for medical gym shoes.[2] (ECF No. 18, PageID.196.) Perry, a diabetic, says that he needed new, prescription New Balance brand athletic shoes. (*Id.*) Perry claims that there was an unnecessary delay in ordering his replacement shoes. (*Id.*) Perry was given a document from Defendant Hall on August 18, 2017, that indicated "shoe size 10 – ordered on 8/7/2017." (*Id.*)

Meanwhile, Perry says that he had to apply his own first aid when he cut his foot caused by pebbles that collected in his shoe due to a tear in the shoe. (*Id.*, PageID.198.) Perry says that on August 28, 2017, Defendant Hall tried to give him Bob Barker brand shoes. According to Perry, Defendant Hall stated that the shoes were not medical shoes because medical shoes were too expensive and health care would not allow him to purchase "extremely large" shoes. (*Id.*, PageID.198-199.)

---

[2] Perry attached to his complaint a Step I grievance response from January of 2017, before the events he complains about, showing that size 10.5-6E shoes were ordered on 1-24-17. (ECF No. 18-5, PageID.261.)

Perry alleges that on August 11, 2017, Defendant Hall told him he was ordering new shoes after he measured Perry's feet and determined that he wears a size 10.5-6E shoe.  (*Id.*, PageID.200.) On August 28, 2017, Perry went to pick up his new shoes, but learned that New Balance brand size 10.5-6E shoes had not been ordered for him.  Instead, Defendant Hall tried to give him a pair of Bob Barker brand shoes that were the wrong size.  (*Id.*)

Perry alleges that he went to see Defendant Hall on September 12, 2017.  Hall informed Perry that he needed to measure his feet because he had lost his foot measurement.  (*Id.*) Perry believes that this was a lie, but he allowed Defendant Hall to remeasure his foot size.  (*Id.*, at PageID.201.)  Perry says that he observed Defendant Hall write down size 10.5, but did not indicate a width for the shoe.  (*Id.*) Perry says that he showed Defendant Hall his old New Balance brand size 10.5-6E shoes and stated, "I hope there won't be anymore excuses this time."  (*Id.*)  Perry says that Defendant Hall responded that there would be no excuses.  (*Id.*)

Perry then visited Dr. Bienvinedo Canlas for a chronic care visit.  (*Id.*)  When he explained about the cut on his foot, Dr. Canlas gave him antibacterial ointment to apply to the cut.  (*Id.*)

On December 4, 2017, Perry says that Defendant Hall, again, tried to give him a pair of Bob Barker brand shoes that were too small.  (*Id.*)  On December 12, 2017, Perry alleges that medical care staff then re-measured his feet and found that he wears size 11-5E.  (*Id.*, PageID.202.)  Perry says that he observed nurse Terry Haske write down that size.  (*Id.*)

On February 14, 2018, Perry received a call-out to pick up his shoes from the Quartermaster. (*Id.*) When Perry arrived to get his shoes, he observed another inmate place a pair of shoes in a New Balance box before giving the box to Perry. (*Id.*) The shoes were not New Balance brand shoes and were size 16. (*Id.*) Perry says he then gave Defendant Hall copies of physician's orders. (*Id.*) Defendant Hall showed Perry a New Balance shoebox that had a size 11.5-6E tag. Hall then alleged stated that it was not his fault if the shoes in the box were the wrong size. (*Id.*) According to Perry, Hall indicated that he would reorder the shoes. (*Id.*)

In late February of 2018, after complaining to health care, Perry received a written response stating that his feet were measured as a size 11.5-5E on December 12, 2017, and despite being offered this size by the Quartermaster "you refused your athletic shoes at that time." (*Id.*, PageID.203.) The pertinent portion of the response is attached:

> Other
> Reason: Athletic Shoe concerns.
>
> Comment: Mr. Perry - Healthcare measured your feet on 12/12/2017. Your feet measured at 11.5 5E. You were offered this size by the Quartermaster and you refused your athletic shoes at that time. Your ACMO approval, special accomodation, and your foot measurments are attached. It is up to you whether or not you accept the shoes but there is nothing further healthcare can do in this matter..

(ECF No. 18-4, PageID.253.) Perry says that he was never offered correctly-sized shoes. (ECF No. 18, PageID.204.)

On February 29, 2018, Perry says that he received a response from Defendant Hall that stated he ordered size 11.5-5E shoes and provided him with a pair of shoes from Walkenhorst with an invoice indicating that they were size 11.5-6E. (*Id.*,

PageID.205, ECF No. 18-4, 254.) Defendant Hall indicated that he needed to remeasure Perry's foot to determine his proper foot size. (ECF No. 18, PageID.204.) Perry says that according to the Walkenhorst catalogue, New Balance brand 10.5-6E shoes are available for $79.90. (*Id.*, ECF No. 18-5, PageID.259.) Perry says Defendant Hall failed to order the proper shoes. (*Id.*)

On March 9, 2018, Perry was offered Bob Barker brand shoes to try on. (*Id.*, PageID.206.) Perry told Hall that he had tried on a pair of Bob Barker brand shoes that were too small and too tight and asked if he would ever get properly fitted medical shoes. (*Id.*) Perry says that Defendant Hall responded by saying, "You're Not!" (*Id.*) On March 27, 2018, Defendant Hall once again provided Perry with Bob Barker brand shoes and stated that is all he would receive. (*Id.*, PageID.208.) Perry says that the Bob Barker brand shoes were too small. (*Id.*) Perry says that Melissa LaPlaunt cancelled his medical detail for athletic shoes because he had refused to accept the shoes offered to him by Defendant Hall. (*Id.*, PageID.211.) As a result, Perry alleges that he needlessly suffered with medical issues to his feet in violation of his Eighth Amendment rights. Perry requests compensatory damages of $700,000, punitive damages of $600,000, costs, and athletic shoes size 10.5-5E to 11-5E. (*Id.*, PageID.218-220.)

### III. Summary Judgment Standard

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Kocak v. Comty. Health Partners of*

*Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Twin City Fire Ins. Co. v. Adkins*, 400 F.3d 293, 296 (6th Cir. 2005).

## IV. Eighth Amendment

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347. The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Id*. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner

might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954.

In order for a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479-80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (applying deliberate indifference standard to medical claims)); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims)).

The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 102, 103-04 (1976). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104-05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[ ] for medical care is obvious even to a lay person."

*Blackmore v. Kalamazoo Cty.*, 390 F.3d 890, 899 (6th Cir. 2004). If the plaintiff's claim, however, is based on "the prison's failure to treat a condition adequately, or where the prisoner's affliction is seemingly minor or non-obvious," *Blackmore*, 390 F.3d at 898, the plaintiff must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment," *Napier v. Madison Cty.*, 238 F.3d 739, 742 (6th Cir. 2001) (internal quotation marks omitted).

It is undisputed that Perry had a medical prescription for athletic shoes. Perry wore prescribed athletic shoes, but says he needed new shoes to prevent serious medical issues. Perry alleges that he needed new shoes because his old shoes were so worn that it caused a cut on his foot requiring him to apply over-the-counter ointment on the cut. In the opinion of the undersigned, Perry has failed to establish that his Eighth Amendment rights were denied by Defendant Hall due to the delay in receiving new shoes. Contrary to Perry's assertion of a serious medical need for new shoes, Perry can only point to a small cut, which healed after he applied ointment to the cut.

Further, Defendant Hall ordered Perry new shoes, but Perry refused the shoes. (ECF No. 41, PageID.542.) Perry says that the shoes were the wrong size. Defendant Hall says that he has over 25 years of experience measuring feet for shoes. (*Id.*) He uses the industry-standard Brannock Device to measure foot size. (*Id.*) Hall says that he measured Perry's feet four different times and confirmed that he wore a size 11-E shoe. (*Id.*) Hall offered Perry size 11-E Bob Barker brand athletic shoes, which are the only shoe that he was authorized to purchase for prisoners with

- 9 -

size 11-E feet.³ (*Id.*) Hall says that Perry refused the shoes on five different occasions. (*Id.*) As a result, Perry's medical accommodation for athletic shoes was discontinued. (*Id.*)

Perry asserts that several inmates witnessed his attempts to get athletic shoes from Defendant Hall. (ECF No. 37, PageID.393-394, 442-443, 450, 452-453.) While these witnesses can confirm that Perry did not receive the shoes he wanted, their proposed testimony cannot establish that Defendant Hall acted with deliberate indifference to Perry's serious medical needs in violation of the Eighth Amendment.

The Court understands Perry's frustration in not receiving the shoes that he wanted. Although Perry has presented evidence that could establish that Defendant Hall was arguably negligent in measuring Perry's foot size and in ordering the proper athletic shoe, allegations of negligence fall short of the deliberate indifference required to state an Eighth Amendment claim. *Farmer*, 511 U.S. at 835 (holding that an Eighth Amendment violation requires a "state of mind more blameworthy than negligence").

## V. Recommendation

Accordingly, it is recommended that the Court deny Perry's motion for summary judgment and grant Defendant Hall's motion for summary judgment. If the Court accepts this recommendation, the case will be dismissed.

---

³ RN Melissa LaPlaunt submitted an affidavit attesting that she witnessed Defendant Hall measure Perry's feet and confirms that his shoe size was 11-E. She further states that she informed Defendant Hall that Perry's medical accommodation for athletic shoes was discontinued. (ECF No. 40, PageID.538.)

NOTICE TO PARTIES: Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within fourteen (14) days of receipt of this Report and Recommendation. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b). Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn*, 474 U.S. 140 (1985).

Dated:    February 18, 2020                             /s/ *Maarten Vermaat*
                                                        MAARTEN VERMAAT
                                                        U.S. MAGISTRATE JUDGE